REQUESTED BY: Andrew F. Cunningham, Secretary Board of Public Roads Classifications and Standards.
You have requested an Attorney General's Opinion regarding the authority and responsibility of the Board of Public Roads Classifications and Standards' (hereinafter "the Board") to act upon a request from Banner County to grant relaxation from the Board's minimum design standards for 37 county roads. The Board has expressed a concern that the 37 recently established public roads appear to be private "access roads" that should not have been established by the county as public roads. You have requested our advice as to how the Board should handle Banner County's request in light of the Board's concern. As discussed below, we believe that the Board has no authority to dispute the County's decision to establish the roads in question. However, the County's request for relaxation of the minimum design standards, as presently submitted, raises additional issues for the Board's consideration.
 Facts
In January of this year, Banner County submitted a written request to the Board for a relaxation of the Board's minimum design standards for 37 recently established public roads. At about the same time, Banner County requested that, pursuant to Neb. Rev. Stat. § 39-2110 (1998), the Nebraska Department of Roads (Department) classify the same roads as "local" roads. These requests resulted from several resolutions passed by the Banner County Commissioners. In a June 15, 1999 Resolution, the Banner County Commissioners declared that the 37 newly established roads were existing roads that (1) had been used by the public as public roadways, including use by school buses and commercial and passenger vehicles, (2) had been maintained by the County as public roadways, and (3) had been acknowledged by the adjoining landowners to be public roadways. The Resolution stated that the County had recently acquired "access easements" from the landowners on whose land the roads were located.
The June Resolution declared the 37 roads (presumably at that time private roads) to be public roads under the jurisdiction of Banner County. It further declared that the roads should be classified as "local" roads and authorized county officers to request a relaxation of the Board's minimum design standards for "local" roads because of peculiar, special, or unique local situations applicable to these roads. We understand that this request has been made because the existing roads do not meet minimum design standards and the County apparently claims that it does not have sufficient funds to rebuild the roads to conform to the applicable design standards. Lastly, we understand that the Department recently granted the County's request and classified the new roads as "local" roads.
We have been provided with a Banner County highway map showing the location of all existing county roads and the approximate locations of the 37 new county roads. Each new road begins at an existing county road, is at least one-quarter mile in length and ends at or near a residence without connecting to another existing county road. Generally, these new roads do not follow section lines. There are, however, other Banner County roads shown on the map that do not follow section lines and that appear to end at or near a residence.
 Discussion
The Board is concerned that Banner County should not have established the 37 roads as "public" roads because these roads are arguably merely driveways to private residences. For the reasons stated below, we believe that the Board does not have the authority to question the Commissioners' decision in this respect.
It has long been the rule in Nebraska that in the absence of fraud, the decision of the County Commissioners to declare an existing road to be a "public road" is not subject to judicial review. The courts have stated the rule as follows:
 Whether the opening of the road will be for the public benefit is within the reasonable discretion of the county commissioners to determine. If their proceedings are regular, and without fraud or oppression, and the landowners' damages are paid, the discretion of the commissioners in opening the road will not be interfered with by the courts.
Cummins v. Sheridan County, 95 Neb. 459, 460, 145 N.W. 975 (1914) (Headnote No. 2). See also, Stone v. Nebraska City, 84 Neb. 789,122 N.W. 63 (1909); Throener v. Board of Supervisors of CumingCounty, 82 Neb. 453, 118 N.W. 92 (1908); Johnson v. Hanson, 1 Neb. (Unof.) 609, 95 N.W. 704 (1901). The rule has also been stated as follows:
 The decision of the necessity or expediency of establishing, maintaining, or vacating a public road is committed exclusively to county boards and other like legislative and governmental agencies and is not subject to judicial review.
Stone v. City of Nebraska City, 84 Neb. 789, 122 N.W. 63 (1909).
We are aware of no statutory authority for the Department or the Board to question the decision of the County Commissioners regarding the establishment of a county road. Additionally, it appears to us that there is a legal basis for the County's action. We understand the Board's concern regarding the County's decision. However, we do not believe that the County's actions can be declared "fraudulent" given the limited facts known by the Board. Also, we believe that it is not the providence of the Board to make a determination of fraud in instances such as this. Instead, it can be argued that the 37 roads in question were properly declared to be public roads.
The County claims that the roads have been used by the public and maintained with public funds. The County has now acquired an easement over the lands occupied by its roads and the County has acted to formally designate the roads as public roads. The fact that the roads are not on section lines and end in cul-de-sacs is also not determinative as to the status of the roads. There are several other existing Banner County roads with similar characteristics. There may be a factual question as to whether the roads are beneficial for the public use, however, there is authority to support the County's action.
 If a highway is open for use by all, it is a public use whether advantage is taken of it by few or many persons. . . [A] highway may be a public use although a much greater benefit will accrue to private persons especially interested than to the public generally, or the proposed street would benefit one property owner more than another. . . .
 Common convenience and necessity may demand the construction of a highway as a mere cul-de-sac, and the appropriation of land therefor has been held to be for a public use.
29A C.J.S. Eminent Domain § 30 (1992).
It has also been stated that:
 If a road, when laid out, is in fact a public road, open to all who may desire to use it, it is a public use, and valid, although the road is primarily designed for the benefit of an individual . . . . If the road is open to public use, the question of the number of persons who will in fact use it is comparatively immaterial.
29A C.J.S. Eminent Domain § 31 (1992).
We have limited factual information. However, it appears likely, from the information provided, that the County's action would not be considered to be fraudulent and that the Banner County Commissioners acted within their discretion when they declared the roads to be public roads. We are therefore of the opinion that absent a judicial finding of fraud, the Board must presume that the County Commissioners properly fulfilled their statutory obligation in establishing the 37 roads as public roads.
Assuming then that the County's request is properly before the Board, you have asked about the Board's authority and responsibility regarding the County's request for a relaxation from the Board's minimum design standards. The Board has been delegated the following power regarding relaxation of minimum design standards.
 The board shall by rule provide for the relaxation of standards for any functional classification in those instances in which their application is not feasible because of peculiar, special, or unique local situations.
Neb. Rev. Stat. § 39-2113 (1998).
The rules and regulations of the Board state, in pertinent part, that:
 Whenever the application of standards of design, construction, or maintenance, as promulgated by the Board. . works a special hardship on any segment of highway, road or street, a county or municipality may request that the Board relax the standards for such segment.
428 NAC § 004.01.
We are aware of no case law interpreting these provisions. However, the general rule of interpretation is that statutory language is to be given its plain and ordinary meaning. Applying this rule of construction, a request for relaxation can be granted by the Board when strict compliance with the design standards would (1) be infeasible or cause a "special hardship," and (2) results from a local situation that is peculiar, special, or unique.
Based on this interpretation, we believe there are several potential questions that the Board should consider regarding Banner County's request. First, the statutory language does not appear to allow a blanket exception from the minimum design standards. The County must therefore provide a factual basis to justify its conclusion that there are special circumstances presented by each of the 37 roads that would justify a relaxation of the minimum design standards. Second, an allegation of lack of funds, without more, would not appear to be a peculiar, special, or unique local situation that would justify a relaxation of the minimum design standards. There is no indication in the language of the applicable statutes that general lack of funding is a special or unique circumstance. If general lack of funding is allowed to be the basis for a relaxation of standards, it would appear that a county could make a case for a relaxation of standards in almost any instance. (However, funding may be a proper consideration in many instances. For example, when adherence to minimum standards would cause the construction costs of a highway improvement to be unduly high, due to the unique topography of an area, lack of funds could be a condition for relaxation of standards. Also, when application of minimum standards prevents needed improvements to existing roadways without the premature removal of valuable improvements of significant remaining usefulness, there may be a unique circumstance warranting the relaxation of standards. Special circumstances related to sparse traffic and low speed limits might also be considered.)
There is a further question for the Board to consider when reviewing the County's request. The only road classification lower than that of "local road" is that of "minimum maintenance road." Banner County's request for relaxation of standards could be considered to be a request that these 37 roads be allowed to meet the minimum standards of minimum maintenance roads. However, the rules and regulations of the Board concerning minimum maintenance roads state that a minimum maintenance road:
 "[m]ay not be the only access to an occupied dwelling — a minimum maintenance road shall be reclassified to local or a higher functional classification whenever an existing dwelling or newly constructed dwelling becomes occupied."
428 NAC § 001.07(5). Because the present system of classification of roads by function contemplates that county roads leading to occupied dwellings meet a higher standard than that of minimum maintenance roads, it can be argued that the 37 roads in question should at least carry a functional classification standard of "local" road, the very standard which Banner County is seeking to relax.
In conclusion, the Board does not have authority to question Banner County's decision to add these private roads to the county road system, absent a judicial finding of fraud on the part of the County. The Board does, however, have authority to determine whether a "peculiar, special or unique local situation" exists for relaxation of the Board's minimum design standards. This is ultimately a discretionary decision for the Board to make based on factors such as minimal usage of a particular road, speed limits, other safety considerations, cost/benefit considerations, and other relevant factors.
Sincerely,
 DON STENBERG Attorney General
 Jeffery T. Schroeder Assistant Attorney General
JTS/ta
APPROVED BY:
_________________________________DON STENBERG
Attorney General